## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA
## ROCK HILL DIVISION

| | | |
|---|---|---|
| Rhondra Hayes, | ) | Civil Action No.: 0:17-cv-01959-JMC |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | **ORDER AND OPINION** |
| | ) | |
| Cedar Fair Entertainment Company, d/b/a | ) | |
| Carowinds, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

Plaintiff Rhondra Hayes alleges that she fell and suffered serious injuries after stepping into a depressed section of the parking lot at Carowinds Amusement Park on July 12, 2014. (ECF No. 1-1 at 3 ¶ 5–¶ at 1.)  Hayes further alleges that Defendant Cedar Fair Entertainment Company ("CFEC"), the owner of Carowinds, failed to maintain adequately safe conditions on its premises, failed to warn of any safety hazards on its premises, and failed to place warning signs around hazardous areas.  (*Id.* at 2.)

This matter is before the court on CFEC's Motion for Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.  (ECF No. 24.)  Hayes opposes the Motion in its entirety.  (ECF No. 25.)  For the reasons set forth below, the court **DENIES** CFEC's Motion for Summary Judgment.

## I.      RELEVANT BACKGROUND TO PENDING MOTION

"Carowinds is a 400-acre (160 ha) amusement park, located adjacent to Interstate 77 in Charlotte, North Carolina."  *Carowinds*, https://en.wikipedia.org/wiki/Carowinds (last visited Jan. 24, 2019).  "Although having an official North Carolina address, the park is located on the state line of the Carolinas, with a portion of the park also located in Fort Mill, South Carolina." *Id.*

Hayes visited Carowinds on July 12, 2014. (ECF Nos. 24 at 2, 25 at 2.)  Upon arrival, she backed her vehicle into a parking spot in a lot owned and operated by CFEC.  (ECF Nos. 25-1 at 9:4–24, 25-2 at 6:5–8.)  Before entering Carowinds, Hayes while near the back of her vehicle unknowingly stepped into a depression extending from the curb toward the back of her parking spot, turned her ankle, and fell to the ground.  (ECF No. 25-1 at 2:7–10, 3:7–10, 5:2–12.)  After the accident, Hayes walked around the park for awhile, but eventually left to pursue medical care wherein she was diagnosed with a hairline fracture.  (*Id.* at 5:15–25, 6:3–11.)  Thereafter, Hayes contacted CFEC about the incident and her injuries.  (ECF No. 25-2 at 6:13–24.)

Edward Bailey, a safety manager at Carowinds, spoke with Hayes and he looked for the depression described by Plaintiff.  (*Id.*; *see also id.* at 7:2–21.)  However, Bailey inspected and photographed the wrong area of the parking lot and failed to take any additional measures to determine where Hayes was injured, including checking the parking lot's video surveillance of the area before records were removed.  (*Id.* at 10:7–12:7.)  In addition, in or around November or December 2014, Carowinds demolished the parking lot without either first measuring/photographing the depression or notifying Hayes or her counsel.  (*Id.*; ECF No. 25-4 at 2:10–21.)

On June 2, 2017, Hayes filed a Complaint against CFEC in the York County (South Carolina) Court of Common Pleas alleging claims for negligence, negligent hiring, training, supervision, and retention for her injuries arising out of incident at Carowinds.  (ECF No. 1-1.) CFEC removed the action to this court on July 24, 2017.  (ECF No. 1.)  After the parties engaged in discovery, CFEC moved for summary judgment on October 5, 2018.  (ECF No. 24.)  Hayes filed a Memorandum in Opposition to CFEC's Motion for Summary Judgment on October 17, 2018, to which CFEC filed a Reply to Plaintiff's Opposition to Summary Judgment on October

24, 2018.  (ECF Nos. 25, 28.)  On December 4, 2018, the court heard oral argument from the

parties on the instant Motion.  (ECF No. 37.)

## II.    JURISDICTION

The court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a)(1) based on

CFEC's allegations that there is complete diversity of citizenship between it[1] and Hayes, who is

allegedly a citizen of the State of South Carolina.  (ECF No. 1 at 1–2 ¶ 4; *see also* ECF No. 1-1

at 3 ¶¶ 1, 2.)  Moreover, the court is satisfied that the amount in controversy exceeds the sum of

Seventy-Five Thousand ($75,000.00) Dollars, exclusive of interest and costs.  (ECF Nos. 1 at 2 ¶

9 & 1-1 at 4 ¶ 8.)

## III.    LEGAL STANDARD

A.    <u>Motions for Summary Judgment Generally</u>

Summary judgment should be granted "if the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed.

R. Civ. P. 56(a).  A fact is "material" if proof of its existence or non-existence would affect the

disposition of the case under the applicable law.  *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242,

248–49 (1986).  A genuine question of material fact exists where, after reviewing the record, the

court finds that a reasonable jury could return a verdict for the nonmoving party. *Newport News*

*Holdings Corp. v. Virtual City Vision*, 650 F.3d 423, 434 (4th Cir. 2011).

In ruling on a motion for summary judgment, a court must view the evidence in the light

most favorable to the non-moving party.  *Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 123-

24 (4th Cir. 1990).  The non-moving party may not oppose a motion for summary judgment with

mere allegations or denial of the movant's pleading, but instead must "set forth specific facts"

---

[1] CFEC is a corporation organized under the laws of Ohio with its principal place of business in
Ohio.  (ECF No. 1 at 1–2 ¶ 4.)

demonstrating a genuine issue for trial. Fed. R. Civ. P. 56(e); *see Celotex Corp. v. Catrett*, 477

U.S. 317, 324 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986); *Shealy v.*

*Winston*, 929 F.2d 1009, 1012 (4th Cir. 1991). All that is required is that "sufficient evidence

supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties'

differing versions of the truth at trial." *Anderson*, 477 U.S. at 249.

B.      Premises Liability Negligence Actions Generally

To assert liability based on a negligence claim in South Carolina, a plaintiff must show

that (1) defendant owed a duty of care; (2) defendant breached this duty by a negligent act or

omission; (3) defendant's breach was the proximate cause of plaintiff's injuries; and (4) plaintiff

suffered injury or damages. *Dorrell v. S.C. DOT*, 605 S.E.2d 12, 15 (S.C. 2004) (citation

omitted). "Whether the law recognizes a particular duty is an issue of law to be determined by

the court." *Jackson v. Swordfish Inv., L.L.C.*, 620 S.E.2d 54, 56 (S.C. 2005) (citation omitted).

A landowner is not required to maintain premises in such condition that no accident could

happen to a patron using them. *See Denton v. Winn-Dixie Greenville, Inc.*, 439 S.E.2d 292, 293

(S.C. 1993). Under South Carolina law, the owner of property owes business visitors or invitees[2]

---

[2] "An invitee is a person who enters onto the property of another at the express or implied invitation of the property owner." *Goode v. St. Stephens United Methodist Church*, 494 S.E.2d 827, 831 (S.C. Ct. App. 1997). "Invitees are limited to those persons who enter or remain on land upon an invitation which carries with it an implied representation, assurance, or understanding that reasonable care has been used to prepare the premises, and make them safe for their reception." *Sims*, 541 S.E.2d at 862 (citation omitted). The visitor is considered an invitee especially when he is upon a matter of mutual interest or advantage to the property owner. *Parker v. Stephenson Oil Co.,* 145 S.E.2d 177, 179 (S.C. 1965); *Landry v. Hilton Head Plantation Prop. Owners Ass'n, Inc.*, 452 S.E.2d 619, 621 (S.C. Ct. App. 1994). The law recognizes two types of invitees: the public invitee and the business visitor. *Sims*, 541 S.E.2d at 862. "A public invitee is one who is invited to enter or remain on the land as a member of the public for a purpose for which the land is held open to the public." *Goode*, 494 S.E.2d at 831. A business visitor, on the other hand, is an invitee whose purpose for being on the property is directly or indirectly connected with business dealings with the owner. *Id.*; *see also Parker v. Stevenson Oil Co.,* 140 S.E.2d 177, 179 (S.C. 1965) (the term "invitee" in premises liability cases usually means the same thing as a business visitor and refers to one who enters upon the

the duty of exercising reasonable and ordinary care for their safety and is liable for any injuries

resulting from a breach of such duty. *H.P. Larimore v. Carolina Power & Light*, 531 S.E.2d

535, 538 (S.C. Ct. App. 2000) (citing *Israel v. Carolina Bar-B-Que, Inc.*, 356 S.E.2d 123, 128

(S.C. Ct. App. 1987)). The landowner has a duty to warn an invitee only of latent or hidden

dangers of which the landowner is on actual or constructive notice. *H.P. Larimore*, 531 S.E.2d

at 538 (citing *Callander v. Charleston Doughnut Corp.*, 406 S.E.2d 361, 362-63 (S.C. 1991)).

To recover damages for injuries caused by a dangerous or defective condition on a landowner's

premises, a plaintiff must show that (1) the injury was caused by a specific act of the defendant

which created the dangerous condition, or (2) that the defendant had actual or constructive

knowledge of the dangerous condition and failed to remedy it.[3] *Wintersteen v. Food Lion, Inc.*,

542 S.E.2d 728, 729 (S.C. 2001) (citing *Anderson v. Racetrac Petroleum, Inc.*, 371 S.E.2d 530

(S.C. 1988)); *Pennington v. Zayre Corp.*, 165 S.E.2d 695 (S.C. 1969); *Hunter v. Dixie Home

Stores*, 101 S.E.2d 262 (S.C. 1957).

"The entire basis of an invitor's liability rests upon his superior knowledge of the danger

that causes the invitee's injuries. If that superior knowledge is lacking, as when the danger is

obvious, the invitor cannot be held liable." *H.P. Larimore*, 531 S.E.2d at 540. A landowner is

not liable for open and obvious dangers unless the landowner "should anticipate the harm despite

such knowledge or obviousness." *Hancock v. Mid-South Management Co., Inc.*, 673 S.E.2d 801,

premises of another at the express or implied invitation of the occupant, especially when he is
there about a matter of mutual interest or advantage); *Hoover v. Broome*, 479 S.E.2d 62, 65 (S.C.
Ct. App. 1996) ("Business visitors are considered invitees as long as their purpose for entering
the property is either directly or indirectly connected with the purpose for which the property
owner uses the land.").

[3] Constructive notice is an "inference which substitutes for actual notice." *O'Leary-Payne v.
R.R. Hilton Head, II, Inc.*, 638 S.E.2d 96, 101 (S.C. Ct. App. 2006). Constructive notice is
"imputed to a person whose knowledge of facts is sufficient to put him on inquiry." *Id.* at 101
(citing *Strother v. Lexington Cnty. Recreation Comm'n*, 504 S.E.2d 117, 122 (S.C. 1998)).
Accordingly, a person charged with constructive notice has received facts that, if diligently
pursued, "would lead to other undisclosed facts." *Id.*

803 (S.C. 2009) (citing *Callander*, 406 S.E.2d at 362).

## IV.     ANALYSIS

A.     <u>The Parties' Arguments</u>

*1. CFEC*

CFEC argues that it is entitled to summary judgment because it lacked "actual or constructive notice that the area of the parking lot at issue could be a hazard to guests." (ECF No. 24 at 4.) As support for its position, CFEC first cites to Hayes's testimony that neither she nor anyone else to her knowledge had ever had an incident or was injured at Carowinds before the accident at issue in this case. (*Id.* (citing ECF Nos. 24-2 at 3:7–13, 24-3 at 3:10–15).) CFEC next cites to Hayes's testimony that she did not have knowledge of (1) whether CFEC knew about the condition of the parking spot and failed to fix the issue or (2) how long the area had been in a depressed condition prior to her incident. (*Id.* at 4–5 (citing ECF Nos. 24-4 at 3:17–4:2, 24-5 at 3:20–23).) Based on this testimony, CFEC argues that "[t]here is no evidence as to how the area of the parking lot" at issue came to be in that condition or that "Carowinds was aware of it." (*Id.* at 5.) CFEC also argues that there is no evidence that any other guests or Carowinds employees either saw the depression in the parking lot or Hayes's fall. (*Id.*) Therefore, CFEC argues that Hayes "has failed to present any evidence that the alleged 'pothole' was a dangerous condition created by Carowinds, or of which Carowinds had actual or constructive knowledge." (*Id.*)

*2. Hayes*

Hayes opposes the instant Motion for Summary Judgment arguing that she has proffered "substantial evidence demonstrating that a genuine issue of material fact exists as to whether Defendant had actual or constructive notice" of the condition in the parking lot and failed to

remedy the issue. (*Id.* at 8.) In this regard, Hayes asserts that the depression in the parking lot

"stemmed from the age of the deteriorating lot and that the defect existed for a sufficiently long

time for Carowinds to have been put on notice." (*Id.*) In support of this assertion, Hayes points

to the following summary of the testimony of her expert Bryan Durig and CFEC's

representatives, Bob Gessell and Edward Bailey:

- Bob Gessell, Defendant's representative, testified that some sections of the Carowinds parking lot dated to 1973, and identified alligatoring (cracking) in the lot as a known problem;

- Photographs taken by Edward Bailey of other areas of the Carowinds parking lot, on or around the date of the incident, show the general state of deterioration in the subject lot (Ex. 6—Bailey Dep. Ex. 4-7);

- Bryan Durig, a mechanical engineer that also specializes in analysis, evaluation, and investigation of standards and code compliance and accident evaluation, issued an expert report in which he opined that [t]he hole/depression in the parking lot where Ms. Hayes fell "would have been created over an extended period of time" and "clearly was not being inspected or maintained in compliance with the Asphalt Institute article . . . ." See, Ex. 7—Bryan Durig Report, December 24, 2017 at 4.

(ECF No. 25 at 8.) Additionally, Hayes asserts that photographs taken of the depression on July

12, 2014, show that "debris had accumulated inside of the hole." (*Id.*) From this evidence,

Hayes argues that "a juror could reasonably conclude that the depression which caused

Plaintiff's fall developed over a significant period of time, during which Defendant [CFEC] had

ample opportunity to properly inspect and cure the defect." (*Id.*) Moreover, Hayes argues that

"Carowinds either knew of the defect and failed to take remedial action, or otherwise did not

discover the defect as a result of its intentional failure to exercise reasonable care concerning its

duties to keep its parking lot in good repair and regularly inspect for defects." (*Id.*)

In further support of her position on the issue of notice, Hayes specifies that the following

evidence "strongly suggests that Carowinds employees had reason to visit the area of the parking

lot where Plaintiff fell to maintain nearby landscaped areas and, as such, would have knowledge

of the subject depression":

- Defendant admits that the parking lot where Plaintiff fell was owned and maintained by Carowinds. Carowinds also handles all landscaping at the park, and the landscaping crew handles smaller patching jobs in the subject parking lot. (Gessell Dep. at 34);

- The photograph of the depression taken the day of the incident establishes that the defect which caused Plaintiff's fall was adjacent to grassy landscaping, meaning that park employees visited this area of the lot with regularity for purposes of grooming and maintaining grass located directly next to the defect;

- Defendant admits that it had knowledge of at least five other falls stemming from parking lot defects, yet failed to establish any policies or procedures, written or unwritten, relating to inspecting the parking lot for trip hazards or defects;

- Defendant admits that it failed to inspect the condition of the parking lot for defects with any regularity or on a scheduled basis;

- Defendant admits that it did not train its employees on how to inspect the parking lot for defects or what constitutes a defect, and employees notified maintenance of possible defects at their discretion;

- Carowinds does not consider industry standards or international codes when determining defective parking lot conditions;

- Defendant admits that it was foreseeable that a person would walk through the area of the parking lot where Plaintiff fell;

- Defendant admits that the area where Plaintiff fell is a depression and that an uneven walking surface can cause a customer to lose her balance. (Bailey Dep. at 75, 82);

- Disturbingly, Defendant's Manager of Construction and Facilities testified that he would have left the defect unrepaired even if he was aware of the condition prior to the incident.

- Defendant authorized the demolition of the area where the incident occurred without first taking photographs of the location, measuring the area or the depression, or notifying Plaintiff or her counsel.

(ECF No. 25 at 9.)  Based on this evidence, Hayes argues that it is a jury question as to whether CFEC had actual or constructive notice of the depression in its parking lot prior to her accident. (*Id.* at 11.)

Hayes also asserts that CFEC "demolished the parking lot on or around December 2014 without first measuring the site, photographing the site, or notifying [][her] or her counsel that

the area would be altered." (*Id.*) Hayes argues that this evidence "supports an inference that Defendant [CFEC] knew that it would likely be exposed to legal liability from the incident and had the area repaved, justifying an inference that Defendant [CFEC]'s failure to retain or alteration of the evidence was deliberate." (*Id.* (citing *Hodge v. Wal-Mart Stores, Inc.*, 360 F.3d 446, 450 (4th Cir. 2004) (finding that "[t]he spoliation of evidence rule allows the drawing of an adverse inference against a party whose intentional conduct causes not just the destruction of evidence . . . but also against one who fails to preserve or produce evidence . . . .")).) Hayes further argues that this claim qualifies as reasonably foreseeable litigation under the definition of spoliation in *Nucor Corp. v. Bell*, 251 F.R.D. 191 (D.S.C. 2008), because "Defendant [CFEC] was notified of the incident and Ms. Hayes's injuries on the day of the incident, prepared an incident report, and received a letter of representation from Hayes's counsel as early as August 21, 2014." (ECF No. 25 at 11 (citing ECF No. 25-8).)

Finally, Hayes argues that CFEC destroyed the scene of the incident without preserving video surveillance footage of the parking lot from the day of the incident. (*Id.* at 12.) As support for this claim, Hayes cites to Bailey's deposition testimony that CFEC "failed to make any effort whatsoever to review, procure, or preserve video evidence." (*Id.*) Accordingly, Hayes contends that CFEC's "failure to preserve video evidence of the scene can be viewed as an effort to thwart the prosecution of this claim." (*Id.* at 13.)

### 3. CFEC

In Reply, CFEC dismisses Durig's opinion that the alleged area "would have been created over an extended period of time" because he "never visited the alleged location of the incident nor spoke[] to any witnesses in the case." (ECF No. 28 at 1.) Instead, CFEC cites its own expert, J. Steven Hunt, who visited the location of the alleged incident and found that there

is "no evidence that Carowinds violated [any standards] either from the photographic evidence provided, from my interview with Mr. Bailey or my inspection of the scene." (*Id.* at 1–2 (citing ECF No. 28-1 at 6).)

CFEC also asserts that the testimony Hayes provides from its witnesses does not establish actual or constructive notice of a hazard on the premises. (*Id.* at 2.) In support of this assertion, CFEC focuses on the fact that Bailey's testimony regarding his awareness of previous reports of trip and falls in the parking lot spans his entire 26-year employment at Carowinds, resulting in approximately 0.2 trips, slips and/or falls in the Carowinds parking lot per year since he has been employed there. (*Id.* (citing ECF No. 28-2 at 3–4).) CFEC also claims that Gessell's testimony regarding "alligatoring" or cracking in some areas of the parking lot does not concern the specific area of the parking lot where Hayes alleges her incident occurred because she does not complain about alligatoring or cracking in this case. (*Id.* at 2–3.)

Finally, CFEC claims that it did not purposefully alter evidence. (*Id.* at 3.) CFEC defends its actions of failing to preserve the video surveillance footage by arguing (1) Bailey received a call to Carowinds regarding Hayes's incident within a week of the incident, not on the day of, and (2) CFEC did not learn that the area where Bailey had inspected and photographed was not the area of the alleged incident until three years after the incident occurred. (*Id.*) By that time, the video surveillance recording had been written over, and the area reviewed by footage would have been the area Bailey inspected, which turned out to be incorrect. (*Id.* (citing ECF No. 28-4 at 3–4).) Therefore, CFEC argues that "at the time of renovation and reconstruction of the parking lot in late 2014, Carowinds had no reason to believe that it was destroying evidence as they had never been able to locate the 'pothole' later described in the Plaintiff's Complaint." (*Id.* at 4.)

B.    The Court's Review

As the basis for its Motion for Summary Judgment, CFEC argues that it did not have either actual or constructive knowledge of the depression in its parking lot and failed to remedy it.  Upon review of Hayes's evidentiary response to CFEC's argument, the court observes that there does not appear to be any dispute regarding (1) whether the depression that created the dangerous condition was caused by a specific act of CFEC or (2) its actual knowledge of the depression.  As to Hayes's attempt to demonstrate constructive knowledge, the court observes that "[c]onstructive notice may be established where a defect has 'existed for so long that the defendant is presumed to have seen the dangerous condition, or to have been negligent in failing to see [it].'"  *Gardner v. United States*, 896 F. Supp. 89, 93 (N.D.N.Y. 1995) (quoting *Velsini v. Cadmus*, 152 F.R.D. 442, 447 (N.D.N.Y. 1994)); *see also Wimberly v. Winn-Dixie Greenville, Inc.*, 165 S.E.2d 627, 630 (S.C. 1969) (explaining that constructive notice asks "whether there was evidence from which the jury might reasonably infer that the defendant, by the exercise of reasonable diligence, should have known of" the danger that harmed the plaintiff).  In the report of Hayes's expert, Durig concluded that the area of the parking lot where Hayes fell was not level and such uneven surface "would have been created over an extended period of time."  (ECF No. 25-7 at 3, 4.)  Durig's conclusions are substantiated by Bailey's testimony that the area where Hayes fell contained a discernible depression and should/would have been inspected "for trip hazards or surface defects or disrepair in the six months prior to the incident."  (ECF No. 25-2 at 18:11–19:10, 20:1–11.)  Upon consideration of the aforementioned evidence, the court finds that it sufficiently raises a genuine issue of material fact as to whether the depression in the area where Hayes fell existed for a sufficient length of time prior to the accident to permit CFEC to

have constructive knowledge of the dangerous condition.[4] *See Fickling v. City of Charleston*, 643 S.E.2d 110, 116–17 (S.C. Ct. App. 2007) (holding that the City of Charleston had constructive notice of a hole in a sidewalk because there were numerous city personnel in the area who could have seen the hole, the hole had been there for a while, the city had a policy to deal with defects in the sidewalks, and problems with sidewalks were frequent). Therefore, the court must deny CFEC's Motion.

## V.    CONCLUSION

Upon careful consideration of the entire record and the parties' arguments, the court hereby **DENIES** Cedar Fair Entertainment Company's Motion for Summary Judgment. (ECF No. 24.)

**IT IS SO ORDERED**.


*J. Michelle Childs*

United States District Judge

January 28, 2019
Columbia, South Carolina

---

[4] The court notes that CFEC's Motion for Summary Judgment is entirely based on the alleged lack of its actual or constructive notice of the depression. Upon its review Hayes's evidentiary support for her claims, the court does not perceive any reason *sua sponte* to not allow the case to proceed to trial.